UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KERLAND W. LOVE,
o/b/o J.T.C.

                            Plaintiff,

                                                     **Hon. Hugh B. Scott**

                        v.                               15-CV-00673-HBS

                                                       (Consent)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Dkt. Nos. 6, 10).

**INTRODUCTION**

Plaintiff, Kerland W. Love on behalf of J.T.C., brought this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that J.T.C. is not disabled and, therefore, is not entitled to disabled childhood Supplemental Security Income. Plaintiff argues that the Administrative Law Judge ("ALJ") assigned to the case committed legal error by failing to develop the record; mischaracterizing the record; misapplying the evidence to the functional domains; and improperly relying on the opinion of the state agency review physician which led to an incorrect finding that J.T.C. was not disabled. The Commissioner opposes plaintiff's motion, arguing that the ALJ's decision is supported by a fully developed record and substantial evidence, and that the ALJ's decision should be upheld.

For the reasons below, the Court grants the plaintiff's motion in part. The Court vacates the ALJ's decision and remands it for further proceedings (Dkt. No. 6). The Court also denies the Commissioner's motion (Dkt. No. 10).

## PROCEDURAL BACKGROUND

Plaintiff filed an application for Social Security Income on April 24, 2012. That application was denied initially and plaintiff filed a timely hearing request. The hearing occurred on December 5, 2013. Plaintiff appeared before an Administrative Law Judge, who considered the case de novo and concluded, in a written decision dated February 12, 2014, that J.T.C. was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on May 28, 2015, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on July 24, 2015 (Dkt. No. 1). The parties moved for judgment on the pleadings. The motions were submitted on February 23, 2016.

## FACTUAL, MEDICAL, AND EDUCATIONAL BACKGROUND[2]

J.T.C. was born on June 8, 2004 and was ten when the ALJ's decision became final in 2015. (R. at 42). He is currently in elementary school and was in special education classes for his behavior. (R. at 44).

The administrative record contains several sets of counseling or other clinical records. A licensed clinical social worker with Child and Family Services named Erica Gruppuso evaluated J.T.C. from March 2012 through September 2012. (R. 320-52, 381-424). Gruppuso determined that J.T.C. had ADHD ON Axis I and a global assessment of functioning score of 45 on the DMS-IV multiaxial scale. (R. 350, 352). Gruppuso recommended counseling with psychiatric

---

[2] References noted as "(R.__)" are to the certified record of the administrative proceedings.

backup. (R. 352). In August 2012, Gruppuso indicated that J.T.C. was prescribed ADHD medication and that it would take a few weeks for the full benefits of the medication to take effect. (R. 390). In September 2012, Gruppuso discharged J.T.C. for failing to attend his counseling sessions. (R. 421).

In July 2012, a nurse practitioner named Diane Page evaluated J.T.C.. (R. 417-20). Page determined that J.T.C. had ADHD on Axis I and a GAF score of 50 on Axis V of the DMS-IV multiaxial scale. (R. 420). Page prescribed Intuniv to J.T.C.. (R. 420).

Dr. Renee Baskin, a consultative psychologist, evaluated J.T.C. in June 2012. (R. 355-58). Dr. Baskin assessed minimal-to-no limitations in attending to, following, and understanding age-appropriate directions and completing age-appropriate tasks. (R. 357). Dr. Baskin assessed moderate limitations in adequately maintaining appropriate social behavior, responding appropriately to changes in the environment, learning in accordance with cognitive functioning, asking questions and requesting assistance in an age-appropriate manner, being aware of danger and taking necessary precautions, and interacting adequately with peers and adults. (R. 357-58). Dr. Baskin diagnosed J.T.C. with ADHD and stated that J.T.C.'s psychiatric issues may have a significant impact on his ability to function on a daily basis. (R. 358).

Dr. Michelle Rudroff, a speech and language pathologist, evaluated J.T.C. in June 2012 and determined that his expressive and receptive language skills were moderately delayed. (R. 361, 362, 363).

Dr. Meyer, a State agency medical consultant, reviewed the record in July 2012 and determined that J.T.C. did not meet or equal a listing. (R. 372). Dr. Meyer also determined that

J.T.C. did not have marked limitations in two domains or an extreme limitation in any single domain. (R. 375-75).

Margaret Gibb, a social worker at Child and Family Services, met with J.T.C. from February 2013 to June 2013. (R. 425, 431). Gibb noted the history of ADHD diagnosis but ended up discharging J.T.C. during the assessment process because J.T.C. missed too many appointments. (R. 438).

School psychologist Dr. Amy Jo Crans-Stafford evaluated J.T.C. In December 2012 and May 2013. (R. 445-51). The doctor found that J.T.C. demonstrated multiple behavioral problems. (R. 446). Dr. Crans-Stafford administered the Wechsler Intelligence Scale for Children- Fourth Edition. (R. 447-48). J.T.C. had a verbal comprehension score of 83, perceptual reasoning score of 87, working memory score of 83, processing speed score of 85, and an IQ of 73. (R. 447-448). Dr. Crans-Stafford found that J.T.C. was within age level expectations for his academic ability but recommended that he be placed in a smaller classroom that had more structure. (R. 449, 450).

The administrative record also hints at an additional set of school counseling records. The record contains a Pyschological Counseling Progress or Data Summary report that makes some reference to J.T.C. receiving unspecified counseling for an unspecified period of time. (R. 482). There is some suggestion in the record that the counseling may have occurred weekly from about December 2012 to about June 2014. (R. 482, 447, 465). The ALJ was at least generally aware at the hearing that some sort of counseling had been occurring by the time the hearing began. (R. 44). Whatever occurred during the weekly counseling, the summary suggests findings

that J.T.C. had difficulty calming himself down, difficulty in self-control, and difficulty in accepting changes in his routine. (R. 482).

## DISCUSSION

### Scope of Review

The only issue to be determined by this Court is whether the ALJ's decision that J.T.C.'s was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

### Standard

Individuals under 18 years old are considered disabled when the individual "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(i). There is a three step process which is used to determine whether or not an individual is disabled under the Social Security Act. See 20 C.F.R. § 416.924.

The first step requires the ALJ to determine whether or not the child is engaged in "substantial gainful activity." See 20 C.F.R. § 416.924. The second step requires the ALJ to determine if the individual has any severe impairment which is defined as anything that causes "more than minimal functional limitations." Id. Finally, the ALJ determines whether the individual's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment. Id. If the ALJ finds that the individual's impairment or combination of impairments meets or equals a listing, the individual is considered disabled. 20 C.F.R. §§ 416.924(d)(1).

Alternatively, if the ALJ determines that the individual's impairment or combination of impairments does not meet or medically equal a listing, the ALJ then must assess functional equivalence to a listing in terms of six domains:

1. Acquiring and using information;
2. Attending and completing tasks;
3. Interacting and relating with others;
4. Moving about and manipulating objects;
5. Caring for yourself; and,
6. Health and physical well-being.

20 C.F.R. § 416.926(a),(b)(1). A child is classified as disabled if the child has a "marked" limitation in any two domains of functioning or an "extreme" limitation in any one domain. 20 C.F.R. §§ 416.926a(d). A "marked" limitation is when the impairment or cumulative effect of the impairments "interferes seriously with [the individual's] ability to independently initiate,

sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I)). An "extreme" limitation "interferes very seriously" with that ability. 20 C.F.R. § 414.926a(e)(3)(I).

**Application**

Plaintiff makes several arguments in support of her motion. Plaintiff argues that the ALJ failed to develop the record by failing to obtain J.T.C.'s counseling records from the Buffalo Public Schools. According to plaintiff, "[i]t was clear from the face of the record that the most consistent mental health treatment J.T.C. received was while in school. He began weekly treatment in at least December 2012, and this continued until J.T.C.'s hearing in December 2013." (Dkt. No. 6-1 at 21). Plaintiff also challenges the ALJ's determination that J.T.C. had significant and immediate improvement in his behavior when prescribed the medication Intuiv for two months in 2012. Id. at 23. The administrative record, in plaintiff's view, shows only modest improvement at best with behaviors such as hyperactivity. Id. at 23-25. Finally, plaintiff criticizes the ALJ's reliance on Dr. Meyer's opinion of J.T.C.'s functioning. Id. at 30. Plaintiff argues that the opinion came in July 2012 without any examination of J.T.C., that other evidence in the record acknowledges J.T.C.'s deteriorating condition after that time, and that the ALJ himself acknowledged the emergence of new evidence after the opinion. Id. at 31.

The Commissioner defends the ALJ's determination in several ways. The Commissioner notes that the ALJ fulfilled regulatory requirements for obtaining records preceding J.T.C.'s application in April 2012. (Dkt. No. 10-1 at 16). The Commissioner does not directly address the unspecified weekly school counseling records but argues that the ALJ did obtain extensive records from 2012 and 2013. Id. From those records, according to the Commissioner, the ALJ

made adequate findings that J.T.C. did not fall under any listings and did not qualify for a functionally equivalence to any listing. Id. at 17.

**Failure to Develop the Record**

Of the various issues that the parties have raised in their motion papers, the missing school counseling records draw the Court's immediate attention.  As the parties know, it is necessary to first ensure "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act" which requires that the ALJ adequately developed the record. See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted). Even when a claimant is represented by counsel, it is the well-established rule in our circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." Id. (citation omitted). "[I]t is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." Id.  at 112-13 (citation omitted). The ALJ should "make every reasonable effort to help [the applicant] get medical records from [the applicant's] own medical sources when [the applicant] gives [the ALJ] permission to request the reports." 20 C.F.R. § 404.1512(d). If the child is in school, the ALJ should ask for "any reports that the school may have . . . that describe any special education instruction or services." 20 C.F.R. § 416.924a(a)(2)(iii). Reasonable efforts can include requesting the pertinent medical records. See Drake v. Astrue, 443 F. App'x 653, 656 (2d Cir. 2011); see also 20 C.F.R. § 416.912(d)(1). The failure to make reasonable efforts to obtain updated school records is cause for remand. Cespedes v. Barnhart, No. 00-CV-7276-GEL, 2002

WL 1359728 at *4-5 (S.D.N.Y. June 21, 2002) (ALJ is required to make reasonable efforts to obtain updated school records, especially when the plaintiff is appearing pro se, and failure to do so is cause for remand); see also McClain v. Apfel, No. 99 Civ. 3236 VM JCF, 2001 WL 66403 at *9-10 (S.D.N.Y. Jan. 26 2001) (ALJ failed to update records which led to him relying on information from when the child was four years old even though the opinion issued when the child was 8 which was cause for remand).

      Here, the missing school counseling records raise too many questions to foreclose J.T.C.'s application without obtaining and reviewing them. There were multiple references to counseling for J.T.C. on the record which should have put the ALJ on notice that the records existed. (R. 482, 467, 44, 447); see Rodriquez v. Colvin, No. 14-CV-214S, 2015 WL 5037014 at *3 (W.D.N.Y. Aug. 25 2015) (remand was necessary because the ALJ was on notice the records existed and did not obtain the records). From what little the Court knows about the school counseling records, weekly counseling sessions seem to have occurred for at least a year from the date of the hearing. (R. 465). The counseling may or may not have addressed J.T.C.'s status from around April 2012. During the sessions, J.T.C.'s ability to calm himself down was addressed in some way. (R. 482). J.T.C.'s capacity for self-control and for adapting to changes in routine also appear to have been issues during the counseling. Id. The details that led to these summary findings might have some impact on J.T.C.'s ability to interact and to relate with others, including his ability "to speak intelligibly and fluently so that others can understand you; participate in verbal turntaking and nonverbal exchanges; consider others' feelings and points of view; follow social rules for interaction and conversation; and respond to others appropriately and meaningfully." 20 C.F.R. § 416.926a(i)(1)(iii). Notably, the ALJ already found a marked

limitation for this domain. (R. 28). The details of the school counseling also might have an impact on how the ALJ would assess J.T.C.'s ability to acquire and to use information and to attend and complete tasks, especially with respect to engaging the world around him. See id. § 416.926a(g)(1)(ii) ("You must also be able to use language to think about the world and to understand others and express yourself; e.g., to follow directions, ask for information, or explain something."); id. § 416.926a(h)(1)(ii) ("Focusing your attention allows you to attempt tasks at an appropriate pace. It also helps you determine the time needed to finish a task within an appropriate timeframe.").

Whether the weekly details of J.T.C.'s school counseling would offset other evidence in the administrative record, and to what extent, is unknown at this time and must await assessment by the ALJ in the first instance. The Court takes no position on how a full record should be weighed or what the ultimate outcome of J.T.C.'s application should be. For now, the Court simply is emphasizing that a potentially significant source of detail from weekly counseling that occurred for at least a year should not be left wholly unaccounted for. A remand is necessary to obtain the missing records and to weigh them in light of the rest of the administrative record. Because of the need for remand, an analysis of plaintiff's other issues is unnecessary at this time.

## **CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is vacated and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). The ALJ should obtain the relevant records from the school and reevaluate the case as explained above.

The plaintiff's motion for judgment on the pleadings (Dkt. No. 6) accordingly, is granted in part. Plaintiff's motion is denied to the extent that it seeks any other relief. The Commissioner's cross-motion (Dkt. No. 10) is denied.

    The Clerk of the Court is directed to close this case.


    So Ordered.


                                                                                  *s/Hugh B. Scott*

                                                                                  Hon. Hugh B. Scott
                                                                                  United States Magistrate Judge

Buffalo, New York
August 2, 2016